UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLEN POHUTSKI,

               Plaintiff,                      Civil No. 4:18-cv-13648

v.                                       Hon. Matthew F. Leitman

DEVON FACILITY
MANAGEMENT, LLC,

               Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT (ECF No. 13)

Plaintiff Allen Pohutski alleges that his employer, Defendant Devon Facility Management, LLC ("Devon"), violated the Family and Medical Leave Act (the "FMLA"), 29 U.S.C. § 2611 *et seq.*, by denying him medical leave and terminating him for taking medical leave. (*See* Compl., ECF No. 1.)   He brings interference and retaliation claims under the FMLA. (*See id.* ¶¶ 42–61, PageID.7–11.)   Devon has moved for summary judgment on Pohutski's claims. (*See* Mot. for Summ. J., ECF No. 13.)   For the reasons explained below, Devon's Motion for Summary Judgment (ECF No. 13) is **DENIED**.

**I**

The basis of this dispute is straightforward.   Pohutski says that he injured his knee, that he requested FMLA-protected leave from November 13, 2015, through

November 24, 2015, that Devon denied his request, that he nonetheless took the leave because it was essential for his recovery, and that Devon wrongfully terminated him on November 25, 2015, the day after he returned from leave.   Devon counters that Pohutski asked for leave to go on a hunting trip, not for FMLA-protected medical leave, and that it fired him because he failed to appear at work after his request to go on his hunting trip was denied.

## II

Pohutski filed this action on November 21, 2018. (*See* Compl., ECF No. 1.) Pohutski brings two FMLA claims against Devon.[1]   First, Pohutski alleges that Devon willfully interfered with his right to FMLA leave in violation of 29 U.S.C. § 2615(a)(1). (*See id.* ¶ 42–55, PageID.7–10.)   Second, Pohutski alleges that Devon willfully retaliated against him by terminating him after he took medical leave. (*See id.* ¶¶ 56–61, PageID.10–11.)   Devon moved for summary judgment on February 24, 2020. (*See* Mot. for Summ. J., ECF No. 13.)   The Court held a hearing on Devon's motion on June 16, 2020.

---

[1] Pohutski also brought claims for discrimination and retaliation in violation of the Michigan Persons With Disabilities Civil Rights Act. (*See* Compl. ¶¶ 62–74, ECF No. 1, PageID.11–14.)   Pohutski stipulated to a dismissal of these claims on March 1, 2019. (*See* Stip. Order Dismissing Counts III & Counts IV, ECF No. 9.)

## III

A movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact." *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 326–27 (6th Cir. 2013) (citing Fed. R. Civ. P. 56(a)).   When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* (quoting *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)).   "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251–52.   Indeed, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* at 255.

## IV

### A

Both parties apply the *McDonnell Douglas* burden-shifting framework to Pohutski's FMLA claims.[2] (*See* Mot. for Summ. J., ECF No. 13, PageID.98–110;

---

[2] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).   The *McDonnell Douglas* approach is used when a plaintiff lacks direct evidence of discrimination and instead relies only upon circumstantial evidence to support his claims. *See*

Resp., ECF No. 15, PageID.366–378.)   The Court will do the same.

Under the *McDonnell Douglas* framework:

> [First,] the employee has the initial burden of establishing his prima facie case; [second] if he does so, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions; [third], the employee has the burden of rebutting the employer's proffered reasons by showing them to be pretextual.

*Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 427 (6th Cir. 2014) (applying *McDonnell Douglas* to an FMLA interference claim); *Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012) (applying *McDonnell Douglas* to an FMLA retaliation claim).

Devon argues that it is entitled to summary judgment because (1) Pohutski cannot establish a prima facie case for either of his claims and (2) even if he could establish a prima facie case, he could not show that the reason for his termination was a pretext for unlawful discrimination in violation of the FMLA.

## B

The Court starts with step one of the *McDonnell Douglas* framework: whether Pohutski has established his prima facie case for both of his claims.

---

*Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891 (6th Cir. 2016).

**1**

The Court begins by considering whether Pohutski has established a prima facie case of FMLA interference.   The FMLA's interference provision bars employers from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided under" the FMLA. 29 U.S.C. § 2615(a)(1). To establish a prima facie case of FMLA interference, a plaintiff must show that:

> (1) []he was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of [his] intention to take leave; and (5) the employer denied the employee FMLA benefits to which []he was entitled.

*Donald*, 667 F.3d at 761 (quoting *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006)).   Devon contends that Pohutski is unable to prove elements 3, 4, and 5 of his prima facie case. (*See* Mot. for Summ. J., ECF No. 13, PageID.98.) The Court disagrees.

**a**

Devon argues that Pohutski has not presented sufficient evidence that he was entitled to leave under the FMLA in November 2015. *See Vonderhaar v. Waymire*, 797 F. App'x 981, 989 (6th Cir. 2020) ("The FMLA entitles an employee to twelve weeks of unpaid leave because of, among other events, a serious health condition.") Devon contends that Pohutski's "purported need for 'rest and relaxation' and 'upcoming surgery' were a ruse to take time off for his long pre-planned deer hunting

vacation with his buddies." (Mot. for Summ. J., ECF No. 13, PageID.99.)   Devon insists that "[t]he FMLA is available for medical necessity not recreational outings," so Pohutski's "admitted purpose" – rest and relaxation while on the trip – "falls well outside the FMLA." (*Id.*)   And Devon points to evidence that Pohutski did go on the hunting trip. (*See id.*, PageID.96; citing Pohutski Dep. Vol. II at 187–189, 238– 246, ECF No. 15-11, PageID.612–614, 663–671.)   Devon also argues that Pohutski's "need for time off was not substantiated by his health care provider." (*Id.*, PageID.99.)

However, Pohutski has presented sufficient evidence to support a finding that he had a medical necessity entitling him to FMLA leave in November 2015.   This evidence includes Pohutski's testimony about the severity of his knee injury and medical documentation regarding his knee injury.   For example, Pohutski testified about the disabling pain caused by his knee injury during the time period before he took off work: "My knee was constantly swelling and I had blood and fluid on my knee.   It was very immobile.   It was – I walked with much trepidation. . . .  I was almost in tears a couple of days." (Pohutski Dep. Vol. II at 281:7–15, ECF No. 15- 11, PageID.706.)   Pohutski also testified that he attended physical therapy approximately three times a week in September and October to treat his knee. (*See* Pohutski Dep. Vol. I at 132:16–133:4, ECF No. 15-11, PageID.556–557.)

Pohutski's medical records further support his claim that his knee injury amounted to a serious medical condition for which he needed time off.   The records reveal that Pohutski's knee required needle aspirations and cortisone injections in September 2015. (*See* Pohutski Medical Records, ECF No. 15-2, PageID.400, 403.) Pohutski has also presented a note from Dr. Robert B. Kohen, Pohutski's orthopedic surgeon, indicating that Pohutski was disabled by his knee injury in November 2015. (*See* 11/12/15 Dr. Kohen Note, ECF No. 15-5, PageID.411.)   The note is dated November 12, 2015 – one day before Pohutski took off work. (*See id.*)   The note says that Pohutski "is presently disabled" by his left knee condition and would be disabled approximately "until 11/24/2015 – pending further evaluation." (*Id.*) And Pohutski continued to receive needle aspirations and cortisone injections for his knee shortly after he was terminated by Devon. (*See* Pohutski Medical Records, ECF No. 15-2, PageID.391–392.)

Pohutski has also offered an explanation of his trip that is consistent with his account of his knee injury.   Pohutski says that although he went on a trip "up north" with his friends while he was off work, his knee injury prevented him from hunting with his friends. (Pohutski Dep. Vol. II at 187:5–190:5, ECF No. 15-11, PageID.612–615.)   Pohutski says that instead of hunting, he mostly "stayed in the car" because he "couldn't walk." (*Id.* at 188:4–22, PageID.613.)   Pohutski further testified that "[i]t was raining horribly [during the trip].   I stayed in the cabin.   I

watched TV.  I laid on this wonderful La-Z-Boy chair they had there with my leg elevated." (*Id.* at 244:13–15, PageID.669.)  And Pohutski insists that his "rifle stayed in the car.  I never took it out for the entire trip." (*Id.* at 189:9–10, PageID.614.)  If a jury credited this evidence from Pohutski, it could reasonably conclude that his trip was not inconsistent with his claimed serious knee injury.

This evidence, when taken together and viewed in the light most favorable to Pohutski, is sufficient to establish that his knee injury rose to the level of a "serious health condition" and that FMLA leave was a medical necessity for Pohutski. Accordingly, Pohutski has established the third element of his prima facie case of FMLA interference – that he was entitled to FMLA leave for his knee injury.

**b**

Next, Devon argues that Pohutski "never gave [Devon] notice of his intent to take leave for an FMLA-qualifying reason." (Mot. for Summ. J., ECF No. 13, PageID.100.)  Devon cites to evidence in the record suggesting that Pohutski initially asked for unpaid time off work to go deer hunting and that he only requested medical leave after his initial request was denied. (*See id.*)  For example, Jon Starkweather, Devon's Program Manager, testified that Pohutski threatened to get a note from his doctor if his request for unpaid leave to go on a hunting trip was denied:

> [H]e approached me, really as a friend the first time, Mr. Pohutski, and said: Hey, Jamie Bostater denied my leave. I want to go hunting.

> I said: Jamie is the site leader.   You work for him.   You
> need to be here.   That's the decision.   You're out of time.
>
> And the second time [Pohutski approached Starkweather]
> it was: I'm still going to go no matter what, and if you
> won't give it to me, then I'll get a reason from my doctor.
>
> And I said: Why aren't you out on FMLA?
>
> [Pohutski answered:] I don't want to be unpaid.[3]
>
> End of conversation.

(Starkweather Dep. at 26:7–17, ECF No. 15-13, PageID.755.)   And during

Pohutski's deposition, he could not recall whether he had mentioned medical leave

to Starkweather before his initial request for unpaid leave was denied. (*See* Pohutski

Dep. Vol. I at 171:23–172:7, ECF No. 15-11, PageID.595–596.)

But even if Pohutski first requested time off for non-medical leave, he has

presented sufficient evidence that he later asked for medical leave and that he made

the extent of his knee injury known to Devon.   In particular, Pohutski testified that

he informed Starkweather and Jamie Bostater, his direct supervisor, that he was

incapacitated by his knee injury:

> I told them [Starkweather and Bostater] that I could barely
> walk; that my knee was becoming very immobile; that as
> the fluid fills up, it causes a lot of pain and it makes the

---

[3] After this colloquy, Starkweather was asked "Wouldn't he have been out unpaid
even if the vacation [Pohutski's initial request for unpaid leave] had been granted?"
Starkweather responded, "Yes, which made it confusing why he wouldn't go after
FMLA.   I don't disagree." (Starkweather Dep. at 26:19–23, ECF No. 15-13,
PageID.755.)

> knee highly immobile.  It's like filling your knee with
> oil. . . .  I told that to John, I told that to Jamie . . . .  They
> all knew I could barely walk.

(Pohutski Dep. Vol. II at 282:13–20, ECF No. 15-11, PageID.707.)   And Pohutski

said that he specifically asked Starkweather for medical leave to care for his knee

injury:

> [Starkweather] asked me why I wanted the five days off.
> I said I wanted to get off my feet for a week.  I had been
> disabled since May – since July.  I'm not getting any
> better.  My friends rented a cabin and they wanted me to
> join them and it looked like a good opportunity to get off
> my feet for a week.  I had a doctor's care and finished so
> many weeks of physical therapy and the knee is swelling
> up and it looks like it's going to have to be drained again.
> I said, "I mean, I need to get off my feet."  He said, "I
> can't let you go.  I need you here."  And we bantered
> back and forth.  And he said, "Are you going to take this
> leave anyway?"  I said, "Are you going to fire me if I do?"
> And he said, "No, but I might have to write you up."  I
> said, "John, I'm asking you now for medical leave.  How
> can you write me up for taking medical leave?"  And he
> didn't answer and he just said – he unequivocally said he
> would not fire me.

(Pohutski Dep. Vol. I at 166:14–167:6, ECF No. 15-11, PageID.590–591.)   In

addition, Pohutski has submitted an email – dated November 13, 2015, the same day

Pohutski took off work – that Pohutski sent to Bostater. (*See* 11/13/15 Pohutski

Email, ECF No. 15-6, PageID.413.)   The email informs Bostater that Pohutski

needed to take medical leave until November 24, 2015, to recover from his knee

injury:

> I have an 8:00 appointment this morning with my orthopedic surgeon [Dr. Kohen] to have my knee drained again, after which he's going to place me on leave until at least Tuesday, November 24th, when I have a follow up appointment to see if I'll be OK to return to work.  I should still be available by phone if you need to get in touch with me.   If I don't see you before I have to leave this morning have a good week and I should see you on the 24th.

(*Id.*)  Bostater forwarded this email to Starkweather and spoke on the phone with Starkweather about the email. (*See* Bostater Dep. at 22:1–12, ECF No. 15-12, PageID.727.)

Viewing the evidence in the light most favorable to Pohutski, a reasonable jury could find that Pohutski has established the fourth element of his prima facie case of FMLA interference – that he gave Devon notice of his intent to take leave for an FMLA-qualifying reason.

### c

Finally, Devon argues that Pohutski has not presented sufficient evidence that Devon denied him an FMLA benefit – medical leave – to which he was entitled. *See Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 308 (6th Cir. 2016) ("A benefit is denied if an 'employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave.'" (quoting *Arban v. W. Pub. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003))).   Devon contends that it "did not interfere with" Pohutski's right to medical leave or reinstatement following the leave because

11

Pohutski "was not entitled to leave for an FMLA-qualifying reason." (Mot. for Summ. J., ECF No. 13, PageID.100–101.)

However, as described above, a reasonable jury could find that Pohutski had a serious health condition that entitled him to medical leave.   And a jury could find that he was denied that FMLA-protected benefit when he was terminated on November 25, 2015, after he returned to work from his medical leave. (*See* Pohutski Dep. Vol. I at 24:14–16, ECF No. 15-11, PageID.448; *see also Mitchell v. Cnty. of Wayne*, 337 F. App'x 526, 532 (6th Cir. 2009) (citing *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006)) ("If an employer denies an employee the right to return to work from FMLA leave, such an act constitutes interference, regardless of whether the employer intended to interfere with the employee's FMLA rights.").)

Accordingly, Pohutski has established the fifth element of his prima facie case of FMLA interference – that Devon denied Pohutski FMLA benefits to which he was entitled.   And, in sum, Pohutski has presented sufficient evidence to support a prima facie case of FMLA interference.

## 2

The Court next addresses whether Pohutski has established a prima facie case of FMLA retaliation.   The FMLA bars employers from "discharg[ing] or in any other manner discriminat[ing] against any individual for opposing any practice made

12

unlawful by" the FMLA. 29 U.S.C. § 2615(a)(2).   To establish a prima facie case

of FMLA retaliation, a plaintiff must show that:

> (1) []he was engaged in an activity protected by the
> FMLA; (2) the employer knew that []he was exercising
> [his] rights under the FMLA; (3) after learning of the
> employee's exercise of FMLA rights, the employer took
> an employment action adverse to [him]; and (4) there was
> a causal connection between the protected FMLA activity
> and the adverse employment action.

*Donald*, 667 F.3d at 761 (quoting *Killian*, 464 F.3d at 556).   Devon argues that

Pohutski cannot establish any element of his FMLA retaliation claim. (*See* Mot. for

Summ. J., ECF No. 13, PageID.101–103.)   The Court disagrees.

First, Pohutski has presented sufficient evidence for a reasonable jury to find

that he engaged in an activity protected by the FMLA.   As described above, he has

presented evidence that he needed medical leave for his knee injury and that he

requested FMLA-protected leave.

Second, as further described above, Pohutski has presented sufficient

evidence for a reasonable jury to find that Devon knew that Pohutski was exercising

his right to medical leave under the FMLA.   Devon counters that Pohutski's

supervisors, Starkweather and Bostater, thought that Pohutski was requesting unpaid

time off for a hunting trip, not for medical leave. (*See id.*, PageID.102.)   And Devon

cites to testimony from Starkweather and Bostater that Pohutski told them he would

get a doctor's note if he had to so that he could go on the trip. (*See id.*; *see also*

Starkweather Dep. at 45:5–7, ECF No. 15-13, PageID.759 ("[Pohutski] says: I'm going to go one way or the other.   If I have to, I'll just go get a note for my knee.").) But Pohutski testified that he told both supervisors about his knee injury and that he requested medical leave from Starkweather. (*See* Pohutski Dep. Vol. I at 166:14– 167:6, ECF No. 15-11, PageID.590–591; Pohutski Dep. Vol. II at 282:13–20, ECF No. 15-11, PageID.707.)   Pohutski has further presented an email that he sent to Bostater informing Bostater that he was taking time off work due to his knee injury. (*See* 11/13/15 Pohutski Email, ECF No. 15-6, PageID.413.)   That evidence, viewed in Pohutski's favor, could support a finding that Devon knew that Pohutski was attempting to exercise his right to medical leave under the FMLA.

Third, Pohutski has presented sufficient evidence that Devon took an adverse employment action against him – firing him the day after he returned from leave – after Devon learned that Pohutski exercised his FMLA rights.

Finally, Pohutski has presented sufficient evidence that there was a causal connection between his protected FMLA activity and the adverse employment action.   The temporal proximity between Pohutski's leave and his termination supports an inference of causation at the prima facie stage. *See Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 284 (6th Cir. 2012) ("Seeger has shown causality by a preponderance of the evidence through close temporal proximity that is suggestive of retaliation."); *see also Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516,

525 (6th Cir. 2008) ("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation."). Here, Pohutski was terminated the day after he returned from medical leave. At the prima facie case stage, that is sufficient temporal proximity to establish a causal link between Pohutski's FMLA-protected leave and his termination. *See Seeger*, 681 F.3d at 283–84 (ruling that termination less than two months after employee notified employer of his medical leave was sufficient to establish causation at prima facie stage).

Accordingly, Pohutski has satisfied all of the elements of a prima facie case of FMLA retaliation.

## C

The Court next turns to step two of the *McDonnell Douglas* framework: whether Devon has articulated a legitimate, non-discriminatory reason for its actions. According to Devon, Pohutski was terminated because:

> Plaintiff engaged in unacceptable and insubordinate conduct when he failed to abide by his supervisor's (Bostater) instruction to be at work after his request for unpaid time off was denied. Rather than appear for work, Plaintiff brazen[ly] went deer hunting. It is undisputed that Plaintiff's request for unpaid time off was denied, and that he was told he was needed at work. . . . It is also undisputed that Plaintiff did not appear for work because he opted to go on the deer hunting trip with his buddies.

(Mot. for Summ. J., ECF No. 13, PageID.106–107; quotation marks and citations omitted.)

Pohutski argues that this reason for his termination does not satisfy Devon's burden at step two of the *McDonnell Douglas* test because the reason is intertwined with, and not independent of, his (Pohutski's) exercise of his rights under the FMLA. (*See* Resp., ECF No. 15, PageID.376–377; citing *Wallace v. FedEx Corp.*, 764 F.3d 571, 590 (6th Cir. 2014).) There is support for Pohutski's contention that an employer's reason for terminating an employee does not satisfy step two of *McDonnell Douglas* where that reason relates directly to the employee's exercise of FMLA rights. *See Wallace*, 764 F.3d at 590 ("In this case, the purported legitimate reason is intimately intertwined with the FMLA leave, and therefore, we reject FedEx's contention" that it had offered an independent and legitimate reason for terminating plaintiff); *Archey v. AT&T Mobility Servs. LLC*, No. CV 17-91, 2019 WL 1434654, at *8 (E.D. Ky. Mar. 29, 2019) ("[T]o the extent [AT&T] claims it terminated [Archey] based, in part, on [her March 26th] absence[ ], which may have been FMLA-qualifying, that reason is 'intimately intertwined' with [Archey's] potentially FMLA-qualifying leave. As such, Defendants have not demonstrated the requisite 'independent, legitimate' reason for Archey's termination." (citations and quotation marks omitted)); *Wellman v. Sutphen Corp.*, No. 08-cv-557, 2010 WL 1644018, at *11 (S.D. Ohio Apr. 23, 2010) ("[T]his court cannot say based on the

16

record before it and as a matter of law that Wellman's alleged insubordination was unrelated to his exercise of FMLA rights and/or that Welllman's dismissal would have occurred even absent Wellman's exercise of FMLA rights." (citation omitted)).

For the purposes of the pending motion, however, the Court will assume without deciding that Devon's reason for firing Pohutski satisfies step two of the *McDonnell Douglas* test, and the Court will address Pohutski's attack on Devon's proffered reason at step three of the test.   (Because the Court concludes that Pohutski has satisfied his burden of showing pretext, this assumption does not affect the resolution of the pending motion.)

### D

Turning to step three of the *McDonnell Douglas* framework, the Court considers whether Pohutski has presented sufficient evidence that Devon's reason for firing him was "pretextual." *Demyanovich,* 747 F.3d at 431.   An employee can show pretext "by offering evidence that (1) the employer's stated reason had no basis in fact, (2) the stated reason did not actually motivate the employer, or (3) the stated reason was insufficient to warrant the adverse employment action." *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 590 (6th Cir. 2014).

Pohutski argues that he has shown that Devon's proffered reason for terminating him – his alleged insubordination by not to appearing at work or providing a valid excuse – had no basis in fact. (*See* Resp., ECF No. 15, PageID.376–

377.) Rather, Pohutski says he did have a valid excuse: his request and need for FMLA leave. More specifically, Pohutski contends that several of the assumptions underlying Devon's conclusion that he was insubordinate – that (a) he did not have a serious knee injury that made leave a medical necessity; (b) he did not request FMLA leave; (c) even if he did request medical leave, such a request was a "ruse" for a hunting trip; and (d) he went on the trip to hunt rather than to allow his knee to recover – were inaccurate. (*See id.*)

The Court agrees that the evidence presented by Pohutski, when viewed in his favor and if credited by a jury, could support a finding that Devon was mistaken in the ways identified by Pohutski. As explained above, Pohutski has made a showing that leave was a medical necessity for his knee injury (and not a ruse for a hunting trip), that he provided sufficient notice to Devon that he was requesting FMLA leave, and that he used the trip to recover from his knee injury rather than to hunt. Accordingly, a reasonable jury could find that Devon was wrong when it concluded that (1) Pohutski was not entitled to FMLA leave and (2) therefore he was insubordinate when he did not appear at work.

Devon counters that, even if it was mistaken about whether Pohutski was entitled to leave and/or was insubordinate, it is still entitled to summary judgment because it honestly believed that Pohutski had been insubordinate and thus was

18

subject to termination. (*See* Mot. for Summ. J., ECF No. 13, PageID.29–31.)   Under

the so-called "honest-belief rule":

> "[w]hen an employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be 'mistaken, foolish, trivial, or baseless.' " *Chen*, 580 F.3d at 401 (quoting *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 713–15 (6th Cir.2007)).

> The employer's claim of honest belief is necessarily tied to the nature of its investigation and disciplinary decision process. We have noted that the "key inquiry ... is 'whether the employer made a reasonably informed and considered decision before taking' the complained-of action." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598–99 (6th Cir.2007) (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir.1998)). The employer certainly must point to particularized facts upon which it reasonably relied. But "we do not require that the decisional process used by the employer be optimal or that it left no stone unturned." *Smith*, 155 F.3d at 807; *see also Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 398 (6th Cir.2008).

> To defeat a summary judgment motion in such circumstances, the "plaintiff must produce sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants ... did not honestly believe in the proffered nondiscriminatory reason for its adverse employment action." *Braithwaite v. Timken Co.*, 258 F.3d 488, 493–94 (6th Cir.2001) (internal citations, quotation marks, and brackets omitted) (alteration in original). For example, the plaintiff may produce evidence that an error by the employer was "too obvious to be unintentional." *Smith*, 155 F.3d at 807 (citation omitted). However, "[a]n employee's bare assertion that the employer's proffered reason has no basis in fact is insufficient to call an

employer's honest belief into question, and fails to create a genuine issue of material fact." *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir.2012) (quoting *Joostberns v. United Parcel Servs., Inc.*, 166 Fed.Appx. 783, 791 (6th Cir.2006)).

*Tingle v. Arbors at Hilliard*, 692 F.3d 523, 531 (6th Cir. 2012).[4]   Devon argues that

it made "a reasonably informed and considered decision before taking the adverse

action" against Pohutski. (Mot. for Summ. J., ECF No. 13, PageID.108.)   According

to Devon:

> Here, the evidence establishes Plaintiff was terminated based on [Devon's] honest belief he engaged in unacceptable conduct and was insubordinate – Bostater and Starkweather knew Plaintiff intended to go deer hunting; Plaintiff did not express a need for leave for any health condition until his request for unpaid leave was denied; Plaintiff made "brazen" admissions to Starkweather that he would go on the hunting trip one way or another and get a note from his doctor; and, [Devon] had knowledge of Plaintiff's comments to others that he planned to take the week off "no matter what" despite being told he was expected to be at work.

---

[4] There is a split of authority within the Sixth Circuit whether the honest-belief rule applies to an FMLA interference claim. *See Bank v. Bosch Rexroth Corp.*, 610 F. App'x 519, 533 (6th Cir. 2015) ("[T]he honest belief rule is not applicable to claims where the employer's frame of mind is not at issue, FMLA interference claims for example."); *Tillman v. Ohio Bell Tel. Co.*, 545 F. App'x 340, 351–52 (6th Cir. 2013) ("An employer who honestly, but mistakenly believes that the employee abused his FMLA leave can still be said to have interfered with, restrained, and/or denied the exercise of those rights."). *But see Allen v. Wal-Mart Stores, Inc.*, 602 F. App'x 617, 621 (6th Cir. 2015) (applying the honest-belief rule to plaintiff's FMLA interference claim).   Here, the Court assumes – but does not decide – that the honest-belief rule applies to Pohutski's interference claim because making that assumption does not affect the outcome of the Court's decision.

(*Id.*, PageID.107–108.)

Pohutski counters that Devon may not invoke the honest-belief rule because it did not conduct a sufficient investigation before it terminated his employment. (*See* Resp., ECF No. 15, PageID.377.)   The Court agrees that Devon is not entitled to summary judgment under the honest-belief rule.   Pohutski has presented sufficient evidence calling into question Devon's investigation.   In particular, Pohutski has shown that before Devon terminated his employment on November 25, 2015, he had (1) informed Devon (via an email to Bostater) that Dr. Kohen was "going to place me on leave until at least Tuesday, November 24th" (11/13/15 Pohutski Email, ECF No. 15-6, PageID.413), and (2) delivered to Bostater the note from Dr. Kohen – which Bostater forwarded to Starkweather – indicating that Pohutski was disabled from November 12, 2015, to November 24, 2015.[5] (*See*

---

[5] Devon has presented some evidence that it decided to terminate Pohutski before he returned to work.   Devon has submitted a Request for Separation form – dated on November 20, 2015, five days before Pohutski was terminated and while he was off work – indicating that the company decided to terminate Pohutski for "un[acc]eptable behavior and ins[u]bordi[nat]ion." (Request for Separation, ECF No. 13-16, PageID.197.)   But, as Devon acknowledges, the company did not "carry[] out the decision to terminate [Pohutski's] employment" until November 25, 2015, one day after Pohutski sent Dr. Kohen's note to Bostater. (Mot. for Summ. J., ECF No. 13, PageID.97; *see* Pohutski Dep. Vol. I at 251:18–252:2, ECF No. 15-11, PageID.676–677; Bostater Dep. at 37:16–38:2, ECF No. 15-12, PageID.730–731.) Thus, a jury could reasonably find that before Devon actually fired Pohutski, it should have recognized that its reason for firing him – its belief that he was not injured and was skipping work without a valid excuse – required further investigation.

Pohutski Dep. Vol. I at 251:18–252:2, ECF No. 15-11, PageID.676–677; Bostater Dep. at 37:16–38:2, ECF No. 15-12, PageID.730–731.)   There is no evidence that anyone at Devon followed up with Pohutski or Dr. Kohen to see if, in fact, Dr. Kohen had made an independent determination that Pohutski was disabled.   Rather, Bostater *assumed* that Dr. Kohen's note was "fraudulent" because "[i]t seemed a little too convenient to something that he really hadn't stressed before." (Bostater Dep. at 30:19–25, ECF No. 15-12, PageID.729.)   A jury could fairly conclude that (1) Devon acted unreasonably in assuming that a note from a physician was fraudulent and (2) it was incumbent upon Devon to conduct at least some minimal inquiry into the validity of the note and the disability determination by Dr. Kohen that was reflected on the note.   And if Devon had made that inquiry, it would have learned that Dr. Kohen had, in fact, declared Pohutski to be disabled before Pohutski took time off work. (*See* 11/12/15 Dr. Kohen Note, ECF No. 15-5, PageID.411.)

Devon counters that it reasonably chose not to investigate Pohutski's email further because Pohutski "made 'brazen' admissions to Starkweather that he would go on the hunting trip one way or another and get a note from his doctor." (Mot. for Summ. J., ECF No. 13, PageID.108.)   But a jury viewing the evidence in Pohutski's favor could reasonably reject this explanation because it seems to assume – without sufficient factual support – that Pohutski could have obtained a disability certificate from Dr. Kohen even if he was not disabled. *See Tingle*, 692 F.3d at 530–31.

Simply put, a jury could reasonably conclude that Devon is not protected by the honest-belief rule because it terminated Pohutski's employment without conducting a reasonable investigation into the disability determination from his physician that he provided before Devon fired him.   A jury could further conclude that Devon did not conduct a reasonable investigation before firing Pohutski because it made no effort to determine what he actually did on his time off and whether his activities were in any way inconsistent with his claimed disability.

For all of the reasons explained above, Pohutski has presented sufficient evidence under the *McDonnell Douglas* framework to go forward with his FMLA interference and retaliation claims, and Devon is not entitled to summary judgment on either claim.

### V

Devon also argues that Pohutski was not entitled to FMLA protections because, even if he was entitled to medical leave, he fraudulently sought and took "leave for a recreational purpose under the guise of a medical issue." (Mot. for Summ. J., ECF No. 13, PageID.103–106; citing *Edgar*, 443 F.3d at 508.)   This is a serious argument and one that a jury may well accept at trial.   But Pohutski's evidence, when viewed in his favor, could support a finding that he sought and took leave for a legitimate medical purpose – to recover from his serious health condition – not for an improper purpose of going on a hunting trip.

## VI

Devon also argues that Pohutski's FMLA claims are time barred.   The FMLA typically has a two-year statute of limitations. *See* 29 U.S.C. § 2617(c)(1) ("Except as provided in paragraph (2), an action may be brought under this section not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought.").   If the two-year statute of limitations applies here, Pohutski's claims would be time barred because he did not file this action until nearly three years after he was terminated.   But the FMLA's statute of limitations is increased to three years when the employer's violation of the Act is "willful." *Id.* § 2617(c)(2) ("In the case of such action brought for a willful violation of section 2615 of this title, such action may be brought within 3 years of the date of the last event constituting the alleged violation for which such action is brought.").   Devon argues that Pohutski cannot show that Devon's alleged FMLA violations were "willful" and thus timely. (*See* Mot. for Summ. J., ECF No. 13, PageID.110–112.) The Court disagrees.

Pohutski has presented sufficient evidence for a jury to find that Devon willfully interfered with his FMLA right to medical leave and willfully retaliated against him for exercising his right to leave.   In particular, as described above, Pohutski has presented sufficient evidence indicating that Pohutski informed his supervisors that he needed medical leave for his knee injury and was thus entitled to

FMLA leave, that Pohutski requested medical leave, that Pohutski's request was denied, that Pohutski provided a doctor's note confirming his disability, and that Devon then terminated his employment for taking leave without conducting a sufficient investigation.   This evidence, when viewed in the light most favorable to Pohutski, could support a finding that Devon's alleged FMLA violations were willful.   Thus, Pohutski's claims are subject to a three-year statute of limitations. Because Pohutski brought this action less than three years after Devon's alleged violations, his claims are not time-barred.   Accordingly, Devon is not entitled to summary judgment based on its statute-of-limitations defense.

## VII

The question before the Court in connection with Devon's motion is not whether Pohutski has strong claims or whether he is likely to prevail at trial.   If that were the question, the Court would grant Devon's motion.   Indeed, as the Court explained on the record at the hearing on Devon's motion, Pohutski's claims suffer from what appear to be serious weaknesses, and problems with Pohutski's credibility appear rather clearly even on his "cold" deposition transcript.

The question before the Court is whether the evidence, when viewed in the light most favorable to Pohutski, creates a genuine dispute of material fact with respect to the essential elements of Pohutski's claims and with respect to Devon's

defenses.   For all of the reasons explained above, it does.   Accordingly, Devon's motion for summary judgment is **DENIED**.

      **IT IS SO ORDERED**.

                            s/Matthew F. Leitman
                            MATTHEW F. LEITMAN
                            UNITED STATES DISTRICT JUDGE

Dated:   August 24, 2020

      I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 24, 2020, by electronic means and/or ordinary mail.

                            s/Holly A. Monda
                            Case Manager
                            (810) 341-9764